IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHANE ALLEN KITTERMAN,
#B80577,

Plaintiff,

vs.

WILLIAM "BILL" NORTON
and JEFFREY DENNISON,

Defendants.   Case No. 18-cv-00190-DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Shane Kitterman, an inmate who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against a Prisoner Review Board ("PRB") member (William "Bill" Norton) and Shawnee's warden (Jeffrey Dennison).[1] (Doc. 1). In the Complaint, Plaintiff alleges that he is scheduled for release on May 28, 2018. (Doc. 1, p. 1). He is required to serve a term of mandatory supervised release ("MSR") which begins on that date, and he objects to certain conditions of MSR.

In particular, Plaintiff challenges those conditions that arise under the Illinois Sex Offender Registration Act, 730 ILCS §§ 150/1 *et seq*. (Doc. 1, pp. 1-2). This includes the duty to locate suitable housing and to register as a sex offender. (Doc. 1, pp. 1-11). Plaintiff insists that his obligations under SORA

---

[1] Plaintiff originally filed this civil rights action in the United States District Court for the Central District of Illinois. *See Kitterman v. Norton*, No. 18-cv-01052 (C.D. Ill. filed Feb. 5, 2018). The Central District of Illinois transferred the case to this District on February 7, 2018.

1

expired in 2006. *Id*. The related obligations thus amount to double jeopardy under the Fifth Amendment, cruel and unusual punishment under the Eighth Amendment, and a violation of due process and/or equal protection of the law under the Fourteenth Amendment. *Id*. In connection with these claims, Plaintiff seeks injunctive relief and monetary damages against the defendants. (Doc. 1, pp. 5, 7, 11).

The Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture,

the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

Plaintiff is currently serving sentences for failing to register as a sex offender in 2012, 2014, and 2015 in St. Clair County Case Nos. 12-CF-1204, 14-CF-1422, and 15-CF-373. *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases). He is challenging these convictions in state and federal court. *See Kitterman v. Garnett*, No. 16-cv-1124-DRH (S.D. Ill. 2016) (Doc. 39) (staying federal habeas action pending outcome of state court proceedings). In the instant Complaint, Plaintiff alleges that he is scheduled to begin a term of MSR on or around May 28, 2018. (Doc. 1, p. 2). He filed this action to address several problems he anticipates as this deadline approaches. (Doc. 1, pp. 1-11).

First, Plaintiff challenges the conditions of his MSR, which are currently scheduled to take effect on May 28, 2018. (Doc. 1, pp. 1-5). William Norton met with Plaintiff to set these conditions on January 18, 2018, less than three weeks before he filed this action. (Doc. 1, p. 1). Norton relied upon information gathered by the Illinois Department of Corrections ("IDOC") from certain law enforcement agencies, circuit court clerks, state's attorneys, and the state police. (Doc. 1, p. 2). Based on this information, Norton determined that Plaintiff is required to comply with the Illinois Sex Offender Registration Act, 730 ILCS §§

150/1 *et seq.* ("SORA"). *Id*. Under SORA, Plaintiff is allegedly required to locate suitable housing and to register as a sex offender. *Id*. Plaintiff objects to these conditions. *Id*.

Norton made this determination after Plaintiff produced "positive evidence" that he is not a "person required to register" under SORA in the State of Illinois. (Doc. 1, p. 2). Plaintiff explained that his obligations under SORA expired on January 10, 2006, pursuant to a fully negotiated plea agreement that he entered into with the State of Illinois 10 years earlier. (Doc. 1, pp. 2-4). On January 10, 1996, Plaintiff was convicted of a violation of 720 ILCS § 5/12-16(c)(1) (West 1992), for sexual acts perpetrated against a non-family member in St. Clair County Circuit Court Case No. 95-cv-750. (Doc. 1, p. 3). He was sentenced to 4 years of probation and released the same day. *Id*. Plaintiff's obligation to register allegedly began on his date of conviction and release (*i.e.*, January 10, 1996) and expired 10 years later (*i.e.*, January 10, 2006). *Id*. At his PRB hearing, Plaintiff submitted documents from the Illinois State Police that "memorialized the expiration date of the 10 year period as being '01-10-06.'" (Doc. 1, p. 2). Plaintiff claims that his status as a "person required to register" under SORA has since been extended on several occasions through the "unlawful actions of local State Prosecutors, in connivance with local Police Departments, while conspiring with the Illinois State Police (ISP)." (Doc. 1, pp. 2, 4). He seeks an order enjoining the defendants from imposing these conditions on his MSR, as well as monetary

damages for the violations of his rights under the Eighth and Fourteenth Amendments.

Second, Plaintiff fears that he will not be released on May 28, 2018, based on a common practice in Illinois known as the "turnaround policy."[2] Warden Dennison is allegedly responsible for assisting inmates in finding suitable housing prior to their release date. (Doc. 1, p. 6). However, Dennison "through his agent, Defendant Norton," allegedly declared that the IDOC and/or PRB have a policy of "turn[ing] those persons labeled as 'Sex Offenders' around at the door." *Id*. Instead of assisting inmates in locating suitable housing, Plaintiff alleges that Warden Dennison prevents convicted sex offenders from finding suitable housing. *Id*. He allegedly "pad[s]" inmate files with documentation of "purported efforts" to locate housing, when little or no effort is actually made to help inmates. *Id*. When inmates are unable to locate suitable housing, they are re-incarcerated instead. *Id*. Warden Dennison has also deemed all sex offenders ineligible for academic, drug, and substance abuse programs and other employment opportunities that allow them to save money and secure suitable housing. *Id*. Plaintiff seeks an Order enjoining the defendants from using the "turnaround policy" to prevent his

---

[2] This policy impacts state inmates who have been convicted of a sex offense and have completed their term of incarceration. *See Armato v. Grounds*, 944 F. Supp. 2d 627, 631 n.3 (C.D. Ill. 2013). After being approved for release on parole by the PRB, an inmate who is unable to locate housing that is deemed suitable by the IDOC is found to be in violation of this condition of parole at or near the time of release. *Id*. On his release date, the inmate is not actually allowed to leave the prison and is instead returned to IDOC custody after being "violated at the door." *Id*. Sex offenders who are unable to secure an approved host site thus find themselves in a seemingly endless procedural loop, which begins and ends in prison. *Id*. *See also Murdock v. Walker*, 2014 WL 916992, at *2-3 (N.D. Ill. 2014) (describing the state parole and MSR framework).

5

release on MSR and requiring the defendants to produce documentation of meaningful and effective efforts to assist sex offenders in locating housing. *Id*.

Finally, Plaintiff names both defendants in connection with his claim that any conditions imposed against him under SORA amount to double jeopardy under the Fifth Amendment. (Doc. 1, pp. 7, 11). Plaintiff has already been subject to the "duty to register" for a period of 10 years and has satisfied that obligation. (Doc. 1). However, he anticipates that the defendants and their agents "will impose upon him certain unlawful and unconstitutional conditions of MSR" that include restrictions on housing with his wife and children if they live near a park, school, or similar location. (Doc. 1, pp. 7, 11). Plaintiff seeks to enjoin the defendants from imposing any condition of MSR that denies him the benefit of his 1996 written plea agreement or subjects him to obligations under SORA. (Doc. 1, p. 11).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following two counts:

**Count 1** - The conditions of Plaintiff's MSR, which include restrictions that are applicable to convicted sex offenders under SORA, violate Plaintiff's rights under the Fifth, Eighth, and/or Fourteenth Amendments.

**Count 2** - The "turnaround policy," which is a practice frequently used by the PRB/IDOC to re-incarcerate sex offenders who are approved for release but unable to locate suitable housing,

6

> violates Plaintiff's rights under the Eighth and/or Fourteenth Amendments.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding the merits of these claims.

## Section 1983 or Habeas

Plaintiff cannot challenge the conditions of his MSR in an action brought pursuant to 42 U.S.C. § 1983. A petition for a writ of habeas corpus is the proper route "[i]f the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation." *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991). On the other hand, the prisoner's remedy is civil rights law, if he "is seeking a different program or location or environment." *Id.*; *see also Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999). Plaintiff is seeking the former, so he should have filed a habeas action instead of a § 1983 action. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (dismissing § 1983 claims that should have been brought as petitions for writ of habeas corpus).

He is currently in IDOC custody, and he seeks to challenge the conditions of his MSR. (Doc. 1). The challenged conditions "define the perimeters of [Plaintiff's] confinement." *Drollinger v. Milligan*, 552 F.2d 1220, 1224 (7th Cir. 1977). In other words, the conditions are what distinguish MSR from outright freedom. *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003). Successfully

7

challenging one of these conditions is comparable to removing one of the "bars" from Plaintiff's prison cell. *Id.* at 580 (citing *Drollinger*, 552 F.2d at 1225; *Clark v. Prichard*, 812 F.2d 991, 997-99 (5th Cir. 1987)). "The release from such custody, even if only partial, is the traditional function of the writ of habeas corpus" and not § 1983. *Drollinger*, 552 F.2d at 1225 (citing *Preiser*, 411 U.S. at 484); *Williams*, 336 F.3d at 579-80.

A person "seeking federal review of the terms of state custody must proceed under 28 U.S.C. § 2254, not under 42 U.S.C. § 1983." *Arnett v. Kemp*, 121 F. App'x 658, 659-60 (7th Cir. 2004) (citing *Williams*, 336 F.3d at 579-80; *Drollinger*, 552 F.2d at 1225). Habeas should be used to challenge constitutional deficiencies in a parole revocation hearing or the conditions of parole. *See Morrissey v. Brewer*, 408 U.S. 471 (1972) (constitutional review of parole revocation proceedings brought in habeas); *Drollinger*, 552 F.2d at 1225 (challenges to conditions of parole must be brought in habeas corpus action). Plaintiff should have pursued relief under 28 U.S.C. § 2254, after first exhausting his state court remedies.[3] *See* 28 U.S.C. § 2254(b)(1).

Plaintiff's request for money damages from the defendants, in addition to injunctive relief, does not change the Court's analysis. A state prisoner's § 1983 action is barred, regardless of the relief sought, if success in the action would necessarily demonstrate the invalidity of his confinement or its duration. *See*

---

[3] A federal habeas petition that is filed by a state prisoner pursuant to 28 U.S.C. § 2254 is subject to immediate dismissal, unless the petitioner can demonstrate that he presented his claims to the Illinois courts and was denied relief at the trial and appellate levels, 28 U.S.C. § 2254(b)(1)(A), or that there is no corrective process available to him, 28 U.S.C. § 2254(b)(1)(B).

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (discussing *Preiser*, 411 U.S. 475 (1973); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Heck v. Humphrey*, 512 U.S. 477 (1994); *Edwards v. Balisok*, 520 U.S. 641 (1997)). This bar applies to prisoners who are "in custody" and are therefore able to seek such review. *Weiss v. Indiana Parole Bd.*, 230 F. App'x 599, *1 (7th Cir. 2007) (citing *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) (per curiam); *Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006)). Plaintiff is in custody and seeks to challenge his MSR conditions, which are part of his custody. In fact, Plaintiff has filed numerous suits in this District aimed at directly or indirectly challenging his convictions and sentences for failing to register as a sex offender and his past and future obligations under SORA. *See, e.g., Kitterman v. Garnett*, No. 16-cv-00684-DRH (S.D. Ill. 2016) (§ 2254 petition challenging convictions for failing to register as a sex offender dismissed as premature); *Kitterman v. Garnett*, No. 16-cv-01124-DRH (S.D. Ill. 2016) (§ 2254 petition challenging 2012, 2014, and 2015 convictions for failing to register as a sex offender on the basis of 1996 plea agreement stayed pending outcome of state court appeals); *Kitterman v. Newton*, No. 17-cv-00733-MJR (S.D. Ill. 2017) (§ 1983 action against state officials for conspiracy to subject Plaintiff to sex offender registration requirements in contravention of 1996 plea deal dismissed as *Heck*-barred). *See also Kitterman v. Illinois State Police*, No. 18-cv-00084 (S.D. Ill. 2018); *Kitterman v. Illinois State Police*, No. 18-cv-00352-NJR (S.D. Ill. 2018). To date, Plaintiff has not successfully challenged any of his convictions or sentences, which gave rise to the

MSR conditions he now challenges. Under the circumstances, Plaintiff's civil rights claim is not cognizable under § 1983. *Heck*, 512 U.S. at 481-82, 486-87. *Williams*, 336 F.3d at 579-80.

## Ripeness

To the extent any of Plaintiff's claims are appropriately bought under § 1983, the Court finds that they are premature. "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *See Murphy v. Madigan*, No. 16-C-11471, 2017 WL 3581175, *3 (N.D. Ill. 2017) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003); *accord, Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998)). When evaluating whether an action is ripe for adjudication, the court considers: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id*. Both inquiries involve the "exercise of judgment." *Id*.

Plaintiff's claims are entirely anticipatory and speculative. He anticipates encountering obstacles to his release on MSR. (Doc. 1, pp. 1-11). One of these barriers is the "turnaround policy," which may or may not prevent him from actually being released to serve his term of MSR on May 28, 2018. *Id*. A related obstacle is the condition requiring Plaintiff to locate suitable housing before being

released. *Id*. If Plaintiff is unable to locate a suitable host site, he may be reincarcerated instead of released in May. *Id*. A third barrier is money. *Id*. If Plaintiff is indigent, he will have difficulty securing suitable housing. *Id*.

Plaintiff does not allege that he has been subject to the turnaround policy yet. He does not suggest that he is unable to find suitable housing, either because he has been prevented from doing so by a defendant or because he lacks money necessary to do so. At this point, his concerns are purely speculative. The Court would have to engage in "impermissible speculation" in order to determine Plaintiff's circumstances on or near the date of his release. *Murphy v. Madigan*, 2017 WL 3581175, *4 (citing *Wisconsin Right to Life State Political Action Committee v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011)). "Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all." *Id*.

At this point, the Court cannot assume that Plaintiff will be unable to afford or locate suitable housing or that he will be subject to the "turnaround policy." Until he has completed his sentence and gone through the process of proposing a host site that is rejected by the IDOC, the Court cannot find that no suitable residence is available to Plaintiff. Courts considering similar claims have dismissed them as premature. *See, e.g., Murphy v. Madigan*, 2017 WL 3581175, *4 (dismissed claims brought by convicted sex offenders who feared that they would not be released on parole for lack of suitable housing because they had not yet completed their sentences); *Kirby v. Siegelman*, 195 F.3d 1285,

11

1290 (11th Cir. 1999) (adjudication of sex offender's post-release conditions was not ripe while prisoner was still incarcerated). Because Plaintiff has not yet been subject to the conditions he now challenges, his claims are not ripe for review even if properly brought under § 1983. Dismissal of Plaintiff's claims is therefore proper.

The instant § 1983 action must be dismissed outright. *See Copus v. Edgerton*, 96 F.3d 1038 (7th Cir. 1996). The Court is not authorized to convert the § 1983 suit into a § 2254 proceeding because doing so may disadvantage Plaintiff. *Id.* at 1039 (identifying the exhaustion requirement and certificate of appealability as "two among many" of these disadvantages). Plaintiff's claims shall therefore be dismissed. However, the dismissal is without prejudice to Plaintiff filing a new suit in state or federal court that does not run afoul of the exhaustion requirements applicable to federal habeas actions or the *Heck*-bar that is applicable in § 1983 actions. *See* 28 U.S.C. § 2254(b)(1); *Morrissey v. Brewer*, 408 U.S. 471 (1972); *Drollinger*, 552 F.2d at 1225; *Preiser*, 411 U.S. at 500.

Although this Court normally gives plaintiffs an opportunity to amend their complaints before dismissing them, the Court may deny leave to amend where an amendment would be futile. *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015). In this particular case, an amendment would not correct the problems presented under *Heck* and *Preiser*. Accordingly, no leave to amend shall be granted.

## Pending Motions

Plaintiff's Second Motion for Leave to Proceed *in forma pauperis* (Doc. 8) is **DENIED** as **MOOT**. Plaintiff was already granted leave to proceed IFP in this case on February 20, 2018, pursuant to his initial Motion for Leave to Proceed *in forma pauperis* (Doc. 6) filed on February 13, 2018.

Plaintiff's Motion for a Temporary Restraining Order ("TRO") (Doc. 10) is **DENIED**, and his Motion for Copy of Federal Rules of Civil Procedure 65(A)-(B) (Doc. 9) is **DENIED** as **MOOT** given the disposition of this case. Plaintiff seeks an order enjoining the defendants from imposing conditions of MSR that are inconsistent with the terms of is 1996 plea deal and an order finding the defendants in breach of the 1996 contract. To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, Plaintiff must demonstrate that (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the relief. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citing *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007)). If those three factors are shown, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. *Id.* (citations omitted). Plaintiff satisfies none of these requirements. His underlying case does not survive preliminary review. He should have pursued habeas relief. To the extent that any claims lie in § 1983, they are either *Heck*-barred or not yet ripe for adjudication.

Finally, Plaintiff cannot add a claim against the defendants for breach of contract by raising it for the first time in a Motion for TRO.

### Disposition

**IT IS ORDERED** that this action, which includes **COUNTS 1** and **2**, is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983. The action is barred by *Preiser v. Rodriguez*, 411 U.S. 475 (1973), *Heck v. Humphrey*, 512 U.S. 477 (1994), and because it is premature. However, this Order in no way precludes Plaintiff from pursuing state or federal habeas relief at this time or from bringing a § 1983 action that does not run afoul of *Heck*.

Plaintiff is **ADVISED** that this dismissal counts as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Further, because two of Plaintiff's other lawsuits[4] have also been dismissed pursuant to § 1915A for being frivolous, malicious, or for failure to state a claim upon which relief may be granted, the dismissal of this case gives Plaintiff his third "strike." Accordingly, if Plaintiff seeks to file any future civil action *while he is a prisoner*, he will no longer be eligible to pay a filing fee in installments using the *in forma pauperis* provisions of § 1915(a) and (b), unless he can establish that he is "under

---

[4] *Kitterman v. Baricevic*, No. 16-cv-01099-MJR (S.D. Ill. dismissed Oct. 31, 2016); *Kitterman v. Newton*, No. 17-cv-00733-MJR (S.D. Ill. dismissed Oct. 25, 2017). Plaintiff has filed an appeal of the dismissal in *Kitterman v. Newton*, No. 17-cv-00733-MJR (S.D. Ill.). Nonetheless, the district court's dismissal counts as a strike under 28 U.S.C. 1915(g) review until such time as the strike has been overturned. *See Coleman v. Tollefson,* 135 S. Ct. 1759, 1761 (2015). *See also Robinson v. Powell*, 297 F.3d 540, 541 (7th Cir. 2002) (district court's issuance of a third strike counts even if the judgment is being challenged on appeal).

14

imminent danger of serious physical injury." 28 U.S.C. § 1915(g). If Plaintiff cannot make the necessary showing of imminent physical danger, he shall be required to prepay the full filing fee for any future lawsuit he may file while incarcerated, or face dismissal of the suit. Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal the dismissal of this case, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff does choose to appeal, he will be denied leave to proceed *in forma pauperis* on appeal because he has "struck out" and is therefore liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien,* 133 F.3d at 467. If the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.[5] FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**   Judge Herndon
2018.03.09 12:38:58 -06'00'

**U.S. District Judge**

---

[5] A Rule 59(e) motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. FED. R. CIV. P. 59(e).